this view, the only result of the error would be to weaken the argument as to the alleged fraud on defendant's rights by the adoption of the plaintiff. It would not affect the discussion of the main proposition.

There should be judgment for the plaintiff on submitted case, with costs. All concur.

(25 Misc. Rep. 84.)

## PEOPLE v. ADIRONDACK RY. CO. et al.

(Supreme Court, Special Term, Albany County. October, 1898.)

1. EMINENT DOMAIN—POWER OF STATE—RIGHTS OF CORPORATIONS.
    A railroad company, under its right of eminent domain, by filing a map and survey of its route, and giving the required notice to all persons affected thereby, acquires no right which it can assert against the state's right of eminent domain to acquire the property for a forest preserve, under Laws 1897, c. 220, since the rights of eminent domain granted to a corporation are subject and subordinate to the right of the state to exercise such power in its own immediate behalf.

2. SAME.
    Where lands were condemned by a railroad company, and a judgment, to which the state was not a party, granted it the right to take a certain strip of land, and appointed commissioners to ascertain the compensation to be paid the owners, but where no compensation therefor had been determined or paid, which is a condition precedent to the transfer of title (Code Civ. Proc. §§ 3371, 3373), and the state has in the meantime procured title thereto, whether by condemnation proceedings under the forest preserve law (Laws 1897, c. 220), or by deeds direct from the owners, as authorized by such law (section 2), the state has a superior right to the property.

Action by the people of the state of New York against the Adirondack Railway Company and others. Judgment for plaintiff.

T. E. Hancock, Atty. Gen., and E. Winslow Paige, for the People. Lewis E. Carr and R. Burnham Moffat, for defendants.

CHESTER, J. The state, by this action, seeks to enjoin the defendant the Adirondack Railway Company from taking or continuing condemnation proceedings to procure a right of way for a railroad across what is known as township 15, which lies in the counties of Warren, Essex, and Hamilton, and which is wholly within the Adirondack Park, and is a part of the forest preserve. While the state was conducting negotiations for the purchase of township 15, this railway company procured from the special term an injunction restraining the owners of the township from conveying it to the state, except subject to the right of way claimed by the company. This claim was based upon the filing by the company, on September 18, 1897, of a map and profile of its proposed right of way over such township, in the clerks' offices in the counties of Warren, Essex, and Hamilton, under section 6 of the railroad law, and the service of notices upon the property owners. From an order continuing that injunction during the pendency of the action, an appeal was taken to the appellate division in the Third department, where the order was reversed, and the injunction vacated. Adirondack Ry. Co. v. Indian River Co., 27 App. Div. 326, 50 N. Y. Supp. 245.

It is urged by the plaintiff here that the appellate division decided in that case that the railway company had no rights under the privilege granted to it to condemn land for railroad purposes, and had acquired none that it could assert against the state, and that any rights or privileges the railway company has under the power of eminent domain were taken subject and subordinate to the right of the state to exercise that power in its own immediate behalf. Adirondack Ry. Co. v. Indian River Co., 27 App. Div. 335, 50 N. Y. Supp. 250. The defendant insists, however, that three of the justices did not concur in this conclusion, and, therefore, that it is not controlling upon the trial before me. Two propositions are discussed in the opinion, which was written by Mr. Justice Herrick: First, the one above stated; and, second, that, if the railway company was right in its contention that it had acquired a right of way over this township, it did not need any injunction, for any conveyance to the state would have to be subject to that right. In the concluding sentence of the opinion, the learned justice says: "I am of the opinion, therefore, that, because, in one aspect of the case, an injunction is not needed to protect the plaintiff's claim of right, and in another aspect of the case it is a practical interference with, restraint upon, and obstruction to, the exercise by the state of its power of eminent domain, the injunction should be vacated and set aside." It will be observed that in this concluding sentence the two propositions are mentioned in the reverse order of their discussion in the opinion. The concurrence of the other justices is in this language: "All concurred; Parker, P. J., Landon and Merwin, JJ., upon grounds last stated in opinion." From this statement of grounds of concurrence, the conflict before me as to what was decided has arisen, the plaintiff claiming that it was the proposition first discussed in the opinion, and mentioned last in the concluding sentence, and the defendant that it was directly the converse. It is my belief that the concurrence was upon the ground that the injunction was not needed to protect the plaintiff's claim of right, instead of the ground last mentioned in the concluding sentence; yet there was no recorded dissent from the opinion of Justice Herrick, and his reasoning in discussing the first proposition is so clear and convincing that I am led to agree with the conclusion he arrived at with respect to that question, regardless of whether or not it was concurred in by two other justices, and to hold here that the defendant company has acquired no rights under the condemnation law which it can assert as against the state. The facts upon which the opinion written at the appellate division is founded are fully stated in the report of that case, and need not be repeated here, nor need I attempt to add anything to the reasoning leading to the conclusion above expressed. See Adirondack Ry. Co. v. Indian River Co., supra.

The facts arising since the granting of the injunction, which was vacated, do not, in my opinion, furnish any material aid in support of the contention of the railway company. The owners were about to convey township 15 to the state when, on October 1, 1897, they were prevented from so doing by the injunction. They thereupon put the deed of the township in escrow, to be delivered when the

injunction was dissolved, and made and delivered another deed ex-
cepting the strip of land described in the railway survey. The deed
in escrow was delivered March 2, 1898, after the dissolution of the
injunction. On the 7th day of October, 1897, the state caused a
notice, under section 4, c. 220, Laws 1897, to be served upon the
owners of the strip of land described in the railroad map; and from
that time it is insisted by the plaintiff that such land became the
property of the state by appropriation, in the exercise of its right
of eminent domain under that law. On the same day, the railway
company began condemnation proceedings under the railroad law,
to take the strip of land in question. In the proceedings commenced
by the railway company, in a single day (March 12, 1898), an order
of reference to hear and determine was made, a trial before the
referee had, a decision made, and a judgment procured that the rail-
way company is entitled to take the strip of land for its use upon
making compensation therefor, and appointing three commissioners
to ascertain the compensation to be made to the owners. The state
was not a party to these proceedings. Each side claims precedence
over the other in commencing their respective condemnation pro-
ceedings, and the railway company attacks the constitutionality of
the provisions of chapter 220, Laws 1897, so far as that act permits
the condemnation of lands for public use by the method pursued by
the state in this case. From the view I take of the case as above
expressed, it is unnecessary for me to determine these questions.
Under the condemnation proceedings taken by the railway company,
the title of the lands sought to be taken does not pass upon the pro-
curing of a judgment of condemnation, nor does it pass until the
amount of compensation has been determined and actually paid to
the owners. Code Civ. Proc. §§ 3371, 3373. The compensation not
having been determined and paid, the title or right of the railway
company, if any, is the same now as when the appellate division va-
cated the injunction. In the meantime the state has procured the
legal title by the delivery of the deeds herein mentioned, regardless of
the question whether or not the alleged condemnation by the state
was effective to appropriate the land as the property of the state
under the law the constitutionality of which is here questioned.

    I am aware that, in the opinion written by Justice Herrick in the
case at the appellate division, mention is made of the relative rights
of the parties with reference to taking the property under the power
of eminent domain, the one under the condemnation law, and the
other under the forest preserve act (chapter 220, Laws 1897), and that
the question of the constitutionality of the exercise by the state of the
power to appropriate land by the method provided in the latter act
is not passed upon in that opinion. That act, however, provides,
not only for a method of appropriation by the state, but authorizes
the forest preserve board to acquire land for the state by "purchase
or otherwise." Section 2. In this case the state has not only ac-
quired the land by agreement with and deed from the owner, but has
pursued the method provided by the statute for a condemnation or ap-
propriation of it; and I think the conclusion reached in the opinion
referred to as to the superior right of the state is equally well founded,

regardless of by which of these two methods the state procured title. If I am right in this, a determination of the constitutionality of the act authorizing the state to pursue the method of condemnation it did is not essential to a decision of the case, for the state may rely alone upon its title by deed.

The state having acquired the lands, they are now part of the forest preserve, and are brought within the protection of section 7 of article 7 of the constitution of 1894, which provides that "the lands of the state, now owned or hereafter acquired, constituting the forest preserve as now fixed by law, shall be forever kept as wild forest lands. They shall not be leased, sold or exchanged, or be taken by any corporation, public or private, nor shall the timber thereon be sold, removed or destroyed." These lands are not therefore subject to be taken by this railway company, and the plaintiff is entitled to the relief demanded in the complaint, with costs.     Ordered accordingly.